## Commonwealth ex rel. *v.* George, Appellant

*Cities of the third class—Inherent and implied powers—Street improvements—Acts of May 23, 1889, and May 16, 1891.*

It is one of the inherent and implied powers of a city to pave, grade, sewer and otherwise improve its streets, and to pay therefor, and this power exists without any express legislative grant, and unless it has been taken away by some legislation.

The act of May 16, 1891, P. L. 78, provides for a mode of assessing the damages on the properties benefited, and was not intended to deprive the

|148  463|
|175  105|
|176  592|

| 148      463 |
|  23 SC  ²335 |

| 148      463 |
|  25 SC  ⁴ 13 |

| 148      463 |
| f 36 SC  ⁴ 53 |

city of the general power to make these improvements at the expense of the city.

The act of May 23, 1889, article XIII, section 1, P. L. 277, expressly empowers city councils to construct or reconstruct sewers of all kinds and to pay therefor out of the general revenue of the city. There is nothing in the act of 1891 inconsistent with this provision of the act of 1889, and it is therefore not repealed by implication.

*Cities of the third class—Contracts for the construction of sewers—Powers of city controller—Duty to certify contracts—Act of May 23, 1889, article IX, section 5.*

Wherever anything is required of a city controller which requires the exercise of judgment, his duties are discretionary and of a judicial character, and in such case he is not subject to the control of the court by mandamus or otherwise.

Where, on the other hand, the duties of the controller are of a clerical or ministerial character, that officer is subject to the control of the court which will enforce the performance of such duties.

Under the act of May 23, 1889, art. IX, sec. 5, the duties of the controller, in regard to the certification of contracts, are purely ministerial, and if a contract be made in due form, after an appropriation for the purpose has been regularly made, it is the duty of the controller to certify the same, and if he should refuse to do so, the court will compel performance by writ of mandamus.

Argued March 18, 1892. Appeals, Nos. 235 and 236, Jan. T., 1892, by defendant, Staughton George, controller of the city of Williamsport, from decrees of C. P. Lycoming Co., Nos. 398 and 399, Dec. T., 1891, awarding peremptory mandamus at the suit of the Commonwealth at the relation of F. H. Keller, mayor, et al., and at the suit of the Commonwealth at the relation of John Jacoby. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Petitions, the one by the mayor and councils of the city of Williamsport, and the other by John Jacoby, contractor, each praying for a mandamus against the city controller.

The petitions set forth that an appropriation of $30,000 was duly made for the construction of sewers in the city of Williamsport by ordinance of councils, and that subsequently an ordinance was passed providing for the making of a contract for the construction of a sewer on Mulberry street in that city, and that a contract in due form was entered into with John Jacoby; that this contract was delivered to defendant to be

certified, in accordance with the provisions of the act of May 23, 1889, art. IX, sec. 5, and that he refused to certify the same.

The defendant's answers averred that there was no legal and valid appropriation made to carry into effect the contract between the city and the relator, Jacoby, for constructing a sewer on Mulberry street, because the ordinance authorizing the construction of sewers provided for assessing the cost thereof on the property benefited by viewers appointed by the court of common pleas of Lycoming county, in pursuance of the act of assembly of May 13, 1891, sec. 8, P. L. 75, and until the deficiency in the cost and expenses of said sewer was finally ascertained as provided in said act, there could be no legal appropriation therefor. Respondent denied that it was his duty to certify said contract, because in the proper discharge of the duties of the office of city controller of the city of Williamsport, the respondent was vested by law with judgment and discretion, and having exercised that judgment and discretion by refusing to certify said contract, and having given his reasons therefor to the city councils, the court of common pleas of Lycoming county cannot compel the city controller by mandamus to certify said contract. Respondent further averred that the ordinance in question was illegal and void.

Plaintiffs demurred.

The court granted the mandamus, METZGER, P. J., delivering the following opinion:

" This is an application for a mandamus to require the city controller to certify a contract entered into between John Jacoby, of the one part and the city of Williamsport, of the other part, for the construction of a sewer in Mulberry street, from Fourth street to the river, by the said party of the first part, in pursuance of an ordinance passed by the select and common councils of said city, known as ordinance No. 441.

" The controller, for the reasons stated in his answer to this application, refused to certify this contract, and it therefore could not take effect as a valid contract. Section 5, of article IX, act of 1889, P. L. 303, which requires this certificate, reads as follows: 'Every contract involving an appropriation of money, shall designate the item of appropriation on which it is founded and the estimated amount of the expenditure thereunder shall be charged against such item, and so certified by

the controller on the contract before it shall take effect as a contract, and the payments required by such contract shall be made from the fund appropriated therefor. If the controller shall certify any contract in excess of the appropriation made therefor, the city shall not be liable for such excess, but the controller and his sureties shall be liable for the same, which may be recovered in an action at law by the contracting party aggrieved. · *It shall be the duty of the controller to certify contracts for the payment of which sufficient appropriation has been made.*'

" There are but two questions involved in this case :

" *First.* Whether a sufficient appropriation had been made for this contract ?

" *Second.* Whether the duty of the controller under the above section is discretionary or merely ministerial ?

" If there was a sufficient appropriation, and the duty of the controller is merely clerical or ministerial, then the writ of mandamus asked for in this case should issue.

" By an ordinance of the city of Williamsport, approved April 6, 1891, known as No. 430, there was appropriated and set apart, out of the general revenue of said city, for sewers, the sum of $30,000, and by ordinance No. 441, above referred to, there was appropriated out of this fund the sum of $1,900 for the sewer in Mulberry street. The sum for which the work on this sewer was agreed to be done by the relator is $1,858.75, which is less than the amount appropriated for the same.

" But it is earnestly contended that this appropriation is illegal. After carefully considering the reasons given by the controller, and after hearing the arguments of counsel in this case, we cannot sustain this position. It is sought, in the first instance, to pay for the construction of this sewer out of the general revenue. We think it cannot be doubted but that it is one of the inherent and implied powers of the city to pave, grade, sewer and otherwise improve its streets, and to pay therefor ; and that this power exists without any express legislative grant. This inherent power of the city clearly exists unless it has been taken away by some legislation. The act of 1891, which is relied on as taking away this power, in no wise affects it. This act provides for a mode of assessing the

damages on the properties benefited, and was not intended to deprive the city of the general power to make these improvements at the expense of the city.

" But if this implied power did not exist, the 1st section of article XIII, of the act of 1889, expressly empowers city councils to construct or reconstruct sewers of all kinds, and to pay therefor out of the general revenue of the city.   There is nothing in the act of 1891 inconsistent with this provision of the act of 1889, and it is therefore not repealed by implication. The part of the act of 1889, providing for the assessments upon properties benefited as the councils may determine, is supplied and repealed by the act of 1891, which provides that these assessments shall be made by viewers appointed by the court. There is nothing whatever in this latter act from which it can be inferred that the method provided therein for assessing the cost of these improvements was intended to limit the power of councils to pay for the improvements in that way alone. The power therein given is additional to the power to do this work at the expense of the city.   Whether the ordinance in controversy is properly drawn, and the property holders may defend or not on the ground that an assessment should have been made before the contract was entered into, is not the question now before us.   All that is pertinent to the issue that is involved in this proceeding is, whether there was a sufficient appropriation, and this depends solely on the question whether the appropriation made out of the general revenue was within the power of councils?   If so, it was clearly the duty of the controller to certify the contract.   The fact that it was sufficient in amount is not controverted, and we think the appropriation likewise legally made.

" This, however, is not the principal question involved in this case.   The question now to be determined depends upon the construction given to the 5th section of article IX of the act of 1889.   Has the controller, under said section, discretionary power, or is his duty only ministerial?   His duties are statutory, and as far as relates to the subject in controversy are contained in the section of the act of 1889 above referred to.   He had no such duty to perform under the act of 1874, but under that act he had other duties, among which were the duties conferred upon him which are enjoined upon county

auditors by the laws of this state, while under the act of 1889 this provision is entirely omitted.

" The case of Runkle v. Commonwealth, 97 Pa. 328, and the case of Dechert v. Commonwealth, 113 Pa. 229, do not rule the question here involved. These decisions were based upon the fact that under the act of 1874, and the acts governing the controller of the city of Philadelphia, his duties were such as to require judgment and discretion, and therefore were not ministerial. In both these cases, the court put great stress upon the fact that there was imposed upon him by the laws of the state all the duties now enjoined by law upon county auditors of the state. In case of Dechert v. Commonwealth, supra, Justice CLARK, in delivering the opinion of the court, inter alia, said : ' It was his duty in any case, before countersigning the warrant, to know that the appropriation necessary for each department had been made, and that the total was within the estimate of the income, as required by the act of 1879 ; to be satisfied that the warrant covered items for which appropriations had been made, and that these appropriations had not been exhausted, as required by the act of 1856 ; these inquiries, as they involved no particular exercise of discretion, are perhaps of a clerical and therefore of a ministerial character only. But other duties devolved upon him ; as the superintendent of the fiscal affairs of the city, (act 2d Feb., 1854,) it was his duty to do what he might " deem needful to protect the interests of the said city." (Act 13th Feb., 1856.) To this end, (act 2d Feb., 1854,) he was invested with all the powers and directed to perform all the duties enjoined by law on county auditors ; and as a legal sanction to the just and full performance on his part of these duties, in the interests of the city, it was declared (act 21st April, 1855) to be a misdemeanor in office, and so subjected him to the pains and penalties of the criminal law, if he should " pass any bill or order for any object not authorized by law." '

" It will also be noticed that both the cases cited arose out of the refusal of the controller to countersign certain warrants drawn on the city treasurer. In both cases, therefore, the party had a legal remedy, notwithstanding the refusal of the controller to countersign the warrants. In the case of Dechert v. Commonwealth, supra, the court, on page 240, say : ' In the

event of the controller's refusal to countersign any warrant, the courts of the commonwealth are open for vindication of the claimant's rights as against the city, and if these alleged rights are submitted to the decision of a court of competent jurisdiction and are there finally adjudicated in his favor, either the neglect of councils to provide for payment, or the refusal of the controller to countersign a warrant in discharge of a legally ascertained liability of the city, would present a different question here.'

" In the case at hand, if the duty of the controller to certify contracts is discretionary, both the contractor and the city is without remedy. It gives the controller a final veto wherever an appropriation of money is involved. That such a power should be intrusted to the city controller, who requires no qualification except the qualifications prescribed by the act of assembly for city treasurer, seems marvelous. We cannot, from a careful reading of the act, come to any such conclusion. The last sentence of section 5 of the act above quoted uses the following imperative language : ' It shall be the duty of the controller to certify contracts for the payment of which sufficient appropriations have been made.' There is nothing whatever here which requires judgment and discretion. It is true, he must have knowledge of a fact, to wit: The fact that a sufficient appropriation has been made. This knowledge requires neither judgment nor discretion. To perform clerical duties, in most instances, requires a knowledge of some fact or facts. Where such fact or facts are acquired by mere inspection without the exercise of judgment, it cannot be said to confer on the party judicial or discretionary duties.

" We do not undertake to say that none of the duties of the controller, prescribed by the act of 1889, are discretionary. Wherever anything is required of him which requires the exercise of judgment, his duties are of this character, and in such case we could not control him by mandamus or otherwise. All we decide is that his duties under the fifth section of article IX of said act, in relation to certifying contracts, are ministerial only. There is no inconsistency in the same officer being vested with both judicial and ministerial duties. This is true in the case of many officers, and the courts will enforce the performance of merely ministerial duties, but have no power

to coerce the performance of duties which require judgment and discretion, and are therefore discretionary.

" We think it is unnecessary to consider the other reasons contained in the answer of the respondent.

" And now, to wit: the fifth day of January, 1892, it is ordered that a mandamus issue in accordance with the prayer of the relator."

Defendant appealed.

*Errors assigned* were (1) granting the mandamus; (2) not dismissing the petitions of the relators; (3) sustaining the demurrer and awarding the writ.

*H. T. Ames* and *H. C. Parsons*, *W. W. Watson* and *Ames & Hammond* with them, for appellant, in support of the contention that the controller is a judicial officer, cited: act of May 23, 1874, sec. 39, P. L. 251; act of May 23, 1889, art. IX, P. L. 302; Runkle v. Com., 97 Pa. 328; Dechert v. Com., 113 Pa. 237.

*H. C. McCormick*, *S. T. McCormick* and *W. D. Crocker*, city solicitor, with him, for appellee.—The provision of the act of 1889 requiring the controller to certify contracts is a new duty imposed upon him, and the duty is clearly ministerial or clerical and not discretionary. There is a vital distinction between the two classes of duties which is always recognized: Cases cited by appellant.

To compel the performance of ministerial duties, mandamus will lie against the controller: Heffner v. Com., 28 Pa. 108; Com. v. Pittsburgh, 34 Pa. 509; Minnesota ex rel. v. Ames, 4 Am. & Eng. Corp. Cas., 649; Braconier v. Packard, 136 Mass. 50; Ohio ex rel. v. Turpen, 9 Am. & Eng. Corp. Cas. 119; Marberry v. Madison, 1 Cranch, 137; Com. v. Woelper, 3 S. & R. 33; Wisconsin ex rel. v. Doyle, 40 Wis. 188; Fox v. Hills, 1 Conn. 294; Betts v. Dimon, 3 Conn. 107; Stratford v. Sanford, 9 Conn. 276; Crane v. Camp, 12 Conn. 467.

Com. ex rel. Keller et al. v. George, Appellant.

Per Curiam, April 18, 1892:

The judgment is affirmed upon the opinion of the learned judge below.

COM. EX REL. JACOBY v. GEORGE, APPELLANT.

PER CURIAM, April 18, 1892:

The judgment is affirmed upon the opinion of the learned judge below.